ORIGINAL

CLERK'S DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2010 SEP 23 PM 2: 46

DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff<br><br>V.<br><br>$6,772,475.42 IN FUNDS CONTAINED IN ACCOUNT XXXX0765 IN THE NAME OF KATHY LAKE AT FIRST SOUTHWEST COMPANY, BROOKSTONE SECURITIES, INC., DALLAS, TEXAS;<br>$247,082.81 IN FUNDS CONTAINED IN ACCOUNT XXXXXX8234 IN THE NAME OF PROCON OF TEXAS AT CAPITAL ONE BANK, DALLAS, TEXAS;<br>$784,114.00 CONTAINED IN ACCOUNT XXXXXX8439 IN THE NAME OF AIR IQ AT CAPITAL ONE BANK, DALLAS, TEXAS;<br>$5,965,057.00 IN U.S. CURRENCY FOUND AT THE RESIDENCE AT 4400 EATON CIRCLE, COLLEYVILLE, TARRANT COUNTY, TEXAS; and<br>REAL PROPERTY LOCATED AT 4400 EATON CIRCLE, COLLEYVILLE, TARRANT COUNTY, TEXAS, INCLUDING ALL BUILDINGS, APPURTENANCES, AND IMPROVEMENTS LOCATED THEREON,<br>Defendants *In Rem*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | 3-10CV-1916L<br><br>NO. |

## COMPLAINT FOR FORFEITURE

Plaintiff United States of America ("the Government"), files this complaint *in rem* against the defendant property, specifically:

a.   $6,772,475.42 in funds contained in account XXXX0765 in the name of Kathy Lake at First Southwest Company, Brookstone Securities, Inc., Dallas, Texas.

b.   $247,082.81 in funds contained in account XXXXXX8234 in the name of Procon of Texas at Capital One Bank, Dallas, Texas.

c.   $784,114.00 contained in account XXXXXX8439 in the name of Air IQ at Capital One Bank, Dallas, Texas.

d.   $5,965,057.00 in U.S. currency found at the residence at 4400 Eaton Circle, Colleyville, Tarrant County, Texas.

e.   Real property located at 4400 Eaton Circle, Colleyville, Tarrant County, Texas, including all buildings, appurtenances, and improvements located thereon, more specifically described as Lot 50, Block 8 of Woodland Hills, First Filing, an addition to the City of Colleyville in Tarrant County, Texas according to the Corrected Map or Plat thereof recorded in Volume 388-186, Pages 52 and 53, Plat Records, Tarrant County, Texas,

("the defendant property") and alleges the following pursuant to Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

I.

1.   This Court has subject matter jurisdiction of this cause of action by virtue of the provisions of 28 U.S.C. §§ 1345 and 1355(a), since this is a forfeiture action commenced by the United States of America.  The Court has *in rem* jurisdiction over the defendant property under 28 U.S.C. § 1355(b).  Venue is proper under 28 U.S.C. § 1355(b) and 28 U.S.C. § 1395, because the acts or omissions giving rise to the forfeiture occurred in this district and the property is located in this district.

II.

2.   The statutory basis for the suit against the defendant property is 31 U.S.C. §

5317(c).   18 U.S.C. § 985 and Rule G of the Supplemental Rules for Admiralty or

Maritime Claims and Asset Forfeiture Actions (Federal Rules of Civil Procedure)

are also applicable.

III.

3.   On or about November 18, 2009, items a. through c. of the defendant property

were seized by agents of the Internal Revenue Service - Criminal Investigation

(IRS-CI) pursuant to seizure warrants issued in the Northern District of Texas.   On

or about November 18, 2009, item d. of the defendant property was seized by the

IRS-CI during a search at 4400 Eaton Circle, Colleyville, Texas. Currently, items

a. through d. of the defendant property remain in the Northern District of Texas.

4.   Item e. of the defendant property has not been seized, but is located within this

district and within the jurisdiction of the Court. The Government does not request

authority from the Court to seize item e. of the defendant property at this time. The

Government will do the following, as provided by 18 U.S.C. § 985(b)(1) and

(c)(1):

(a)   post notice of this action and a copy of the Complaint on the defendant real
property;

(b)   serve notice of this action on the owners of the defendant real property, and
any other person or entity who may claim an interest in it, along with a copy
of this Complaint; and

(c)     file a lis pendens in Tarrant County records concerning the defendant real property's status as a defendant in this *in rem* action.

## V.

5.     The names of the known potential claimants to the Defendant property are Larry Lake and Kathy L. Lake.  Notice of this action can be sent to Larry Lake, through his attorney Lawrence Brown at 512 Main Street, Suite 712, Fort Worth, Texas 76102, telephone 817.870.0025, facsimile 817.870.0515, via electronic mail address lawrence.brown@browntax.com.  Notice of this action can be sent to Kathy L. Lake through her attorney, Paul E. Coggins at Locke Lord Bissell & Liddell, LLP, 2200 Ross Avenue, Suite 2200, Dallas, Texas 75201, telephone 214.740.8104, facsimile 214.740.8800, via electronic mail address pcoggins@lockelord.com.

## VI.

6.     The defendant property is subject to forfeiture pursuant to 31 U.S.C. § 5317(c)(2) because the property was involved in, or is traceable to property involved in, a violation of, violations of, or a conspiracy to violate 31 U.S.C. § 5324.  These allegations are more fully set forth in the attached Verification Affidavit of IRS-CI Special Agent Alan Hampton.

## VII.

THEREFORE, the Government requests the following:

(a)  the District Clerk issue a warrant for the arrest of items a. through d. of defendant

property pursuant to Rule G(3)(b)(i) of the Supplemental Rules for Certain

Admiralty or Maritime Claims and Asset Forfeiture Actions;

(b)  items a. through d. of the defendant property be arrested by the Secretary of the

Treasury, IRS-CI, as provided by Rule G(3)(c) of the Supplemental Rules for

Certain Admiralty or Maritime Claims and Asset Forfeiture Actions;

(c)  notice of the complaint for forfeiture be posted on the item e. of the defendant

property by the Secretary of the Treasury, IRS-CI, pursuant to 18 U.S.C. §

985(c)(1)(B);

(d)  publication of notice of the complaint for forfeiture be made by posting notice on

the official Government Internet site www.forfeiture.gov for at least 30

consecutive days in accordance with Rule G(4)(a)(iv)(c) of the Supplemental

Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions;

(e)  notice pursuant to Rule G(4)(b) of the Supplemental Rules for Certain Admiralty

or Maritime Claims and Asset Forfeiture Actions be sent to any person reasonable

appearing to be a known potential claimant, advising the person of the date of

notice; the deadline for filing a claim (35 days after notice is sent); that an answer

or motion under Rule 12(b) must be filed no later than 21 days after the filing of

the claim; and the name of the Government's attorney to be served with the claim

and answer;

(f)     after all proceedings are had on this complaint for forfeiture, that the defendant

property be condemned by judgment and order of this Court and declared and

decreed to be forfeited to the Government according to law;

(g)     all costs and expenses incurred by the Government in obtaining the condemnation

and forfeiture of the defendant property be appropriately taxed against any person

or entity who may file a verified claim and answer herein, and/or if more than one

person or entity files a verified claim and answer herein be jointly taxed and

prorated among them, as the Court deems just and equitable; and

(h)     the Government have such other and further relief, at law or in equity, to which it

may show itself justly entitled.

Respectfully submitted,

JAMES T. JACKS
UNITED STATES ATTORNEY

John J. de la Garza III
Assistant United States Attorney
Texas State Bar No. 00796455
1100 Commerce, Third Floor
Dallas, Texas 75242
Telephone:   214.659.8682
Facsimile:   214.659.8803
john.delagarza@usdoj.gov

## AFFIDAVIT IN SUPPORT OF COMPLAINT FOR FORFEITURE

### INTRODUCTION

I, Alan Hampton, being duly sworn, do state as follows:

1.     I am a Special Agent with the Internal Revenue Service, Criminal

Investigation Division, United States Department of the Treasury, assigned

to the Dallas, Texas office and have been so employed in this capacity since

July 1991.  My responsibilities include the investigation of possible

criminal violations of the Internal Revenue Laws (Title 26, United States

Code), the Bank Secrecy Act (Title 31, United States Code), the Money

Laundering Control Act (Title 18, United States Code), and other related

offenses.  I am currently assigned to the Internal Revenue Service-Criminal

Investigation Division ("IRS-CI") North Texas Asset Forfeiture Task Force

in Irving, Texas.  Our mission is to identify and investigate possible money

laundering and currency structuring violations, specifically, violations of 18

U.S.C. §§ 1956, 1957, and 1960 and 31 U.S.C. §§ 5316, 5324, and 5330.

### PROPERTY FOR FORFEITURE

2.     I make this affidavit in support of a forfeiture complaint for the following

property:

a.     $6,772,475.42  in funds contained in account XXXX0765 in the
name of Kathy Lake at First Southwest Company, Brookstone
Securities, Inc., Dallas, Texas.

b.     $247,082.81 in funds contained in account XXXXXX8234 in the
name of Procon of Texas at Capital One Bank, Dallas, Texas.

1

    c.    $784,114.00 contained in account XXXXXX8439 in the name of Air IQ at Capital One Bank, Dallas, Texas.

    d.    $5,965.057.00 in U.S. currency found at the residence at 4400 Eaton Circle, Colleyville, Tarrant County, Texas.

    e.    The real property located at 4400 Eaton Circle, Colleyville, Tarrant County, Texas, more specifically described as Lot 50, Block 8 of Woodland Hills, First Filing, an addition to the City of Colleyville in Tarrant County, Texas according to the Corrected Map or Plat thereof recorded in Volume 388-186, Pages 52 and 53, Plat Records, Tarrant County, Texas.

## LEGAL AUTHORITY FOR FORFEITURE

### Summary

3.    Based on my training, experience, and the information contained in the subsequent paragraphs, I have probable cause to believe the personal property described in paragraph 2 is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(b) and 31 U.S.C. § 5317(c) and 18 U.S.C. § 981 and 984, respectively, because the property was involved in, or traceable to property involved in, a violation or violations of 31 U.S.C. § 5324(a).

### Relevant Statutes

4.    Title 31, United States Code, Section 5313 and 31 C. F. R. Part 103 of the Bank Secrecy Act (BSA) require any financial institution that engages with a customer in a currency transaction (*i.e.* a deposit or withdrawal) in excess of $10,000.00 to report the transaction to the Internal Revenue Service on Form 4789, Currency Transaction Report ("CTR"). These regulations also

require that multiple transactions be treated as a single transaction if the financial institution has knowledge that they are conducted by, or on behalf of, the same person, and they result in either currency received or disbursed by the financial institution totaling more than $10,000.00 during any one business day.

5. CTRs are often used by law enforcement agencies to uncover a wide variety of illegal activities, including narcotics trafficking and money laundering. Many individuals involved in these illegal activities are aware of such reporting requirements and take active steps to cause financial institutions to fail to file CTRs. These active steps are often referred to as "structuring" and involve making multiple cash deposits in amounts of $10,000.00 or less to multiple banks and/or branches of the same bank on the same day, on consecutive days, or within a few days of each other.

6. 31 U.S.C. 5324(a)(3) criminalizes structuring. In order to establish the violation, the government must prove that a person structured or assisted in structuring, or attempted to structure or assist in structuring, any transaction with one or more domestic financial institutions for the purposes of evading the reporting requirements of section 5313(a) or any regulation prescribed under any such section. Further, 31 U.S.C. 5324(a)(1) criminalizes causing or attempting to cause a domestic financial institution to fail to file a CTR.

7. 31 U.S.C. § 5317 provides for the forfeiture of any property involved in a violation of § 5324, or any conspiracy to commit such any such violation,

3

and any property traceable to any such violation or conspiracy. It is further provided that the property shall be forfeited in accordance with 18 U.S.C. § 981(a)(1)(A).

8.  18 U.S.C. § 984 provides that, in any forfeiture action *in rem* in which the subject property is funds deposited in an account in a financial institution, the government does not have to identify the funds involved in the offense that is the basis for the forfeiture; it is no defense that those funds have been removed and replaced by other funds; and identical funds found in the same account as the funds involved in the forfeiture offense are subject to forfeiture. In essence, § 984 allows the government to seize for forfeiture identical property found in the same place where the "guilty" property had been kept. However, § 984 does not allow the government to reach back in time for an unlimited period; a forfeiture action (including a seizure) against property not directly traceable to the offense that is the basis for the forfeiture cannot be commenced more than one (1) year from the date of the offense.

## FACTS SUPPORTING FORFEITURE

### Introduction

9.  In 2009, an investigation was initiated on Larry Lake and his wife Kathy Lake and their financial activities. Through that investigation, I have learned or determined the information set out in the subsequent paragraphs. In summary, I believe that Larry Lake and Kathy Lake devised a scheme in

4

which they concealed their net worth before and during the bankruptcy proceedings concerning Larry Lake. Methods of concealment included the movement of money from Larry Lake's personal financial accounts to Kathy Lake's personal financial and business financial accounts. In further execution of this scheme, Larry Lake and Kathy Lake concealed cash proceeds from the bankruptcy court and the IRS by structuring over $9,000,000.00 in cash into financial accounts from August 2006 through November 2009, ultimately resulting in almost $12,000,000.00 accumulating in an investment account and over $800,000.00 accumulating in each of two business financial accounts. The Lakes also purchased a residence for $883,715.33 in 2006, using a substantial portion of the structured cash in the purchase. The Lakes also accumulated $5,965,057.00 in currency which was stored inside their residence at 4400 Eaton Cirlce, Colleyville Texas. During the time they accumulated this wealth, Larry Lake and Kathy Lake jointly reported significantly less in adjusted gross income to the IRS. I believe their scheme violated 31 U.S.C. § 5324 and 18 U.S.C. § 152.

### The Lakes

10.  Larry Lake, a sixty-four year old resident of Colleyville, Texas, graduated from the University of Texas at Austin in 1969 and has been a licensed pharmacist since June 4, 1969. Larry Lake has three children by his first wife, Jacqueline Ruth Lake - Stacy Lynn Lake, Travis Keith Lake, and

5

Jonson Tyler Lake. Divorced from Jacqueline Lake in 1982, Larry Lake married Kathy Lyn Loyd in 1984, and they have one child, Chelsi Rae Lake.

11.  On February 5, 1990, Larry Lake and Kathy Lake were divorced. As part of the divorce decree, Kathy Lake was awarded the business Grapevine Drug Mart. According to Larry Lake, Larry and Kathy have since remarried.

### The Lakes' Businesses

### VIP Finance

12.  VIP Finance is an auto title lender started by Larry Lake in 1989. According to the website for the business (vipfinanceoftexas.com), loans are made to customers based on the value of the customer's vehicle; the vehicle is the customer's credit. VIP Finance has six metroplex locations: 801 East Division Street in Arlington, 4125 Colleyville Boulevard in Colleyville, 12095 Garland Road in Dallas, 610 South Central Expressway in Richardson, 2014 Britain Road in Irving, and 702 South Stemmons Freeway in Lewisville.

13.  According to appraisal district records, Larry Lake owns the VIP Finance locations at 12095 Garland Road, 2014 North Britain Road, and 610 South Central Freeway. Appraisal district records reflect that the VIP Finance location at 801 East Division is owned by Lakeway Properties, a business operated by Larry Lake. According to appraisal district records, the VIP Finance location at 4125 Colleyville is owned by Kathy Lake. Appraisal

district records show that the VIP Finance location at 702 South Stemmons

Freeway is owned by VIP Finance.

### CASH Auto Sales

14.    CASH Auto Sales is a business selling used cars, and Tarrant County

records indicate that Larry Lake has operated CASH Auto Sales under its

assumed name since 1992. The business is a proprietorship, and Larry

Lake is listed as its owner. Cash Auto Sales is located at 801 East Division

in Arlington. Another assumed name certificate for CASH Auto Sales was

filed by Larry Lake in July 2005.

### Air I.Q.

15.    McLennan County records indicate Kathy Lake obtained an assumed name

certificate for AIR I.Q., a business located at 4924 Cobbs Drive #9E in

Waco, Texas, in October 2004. The Waco address for Air I.Q. on the

assumed name certificate is for a condominium titled in the name of Chelsi

Lake, the Lake's daughter. The records indicate Kathy Lake is the owner

of the business. Additional Tarrant County records show that Kathy Lake

obtained an assumed name certificate for AIR I.Q. at 4400 Eaton Circle in

Colleyville, Texas in September 2008. Again, Kathy Lake was indicated as

the business' owner.   There are no corporate filings with the Secretary of

State for Air I.Q. The bank accounts for Air IQ do not appear to be normal

business accounts; there are no day-to-day expenses, and the accounts

appear to be used solely for the receipt of cash deposits and subsequent

funds transfers into other Lake-controlled accounts.

### Procon of Texas

16.    Tarrant County records indicate Larry Lake obtained an assumed name

certificate for Procon of Texas at 4400 Eaton Circle in Colleyville, Texas in

September 2008. The certificate indicates Larry Lake is the owner of the

business.  The bank accounts for Procon do not appear to be normal

business accounts; there are no day-to-day expenses, and the accounts

appear to be used solely for the receipt of cash deposits and subsequent

funds transfers into other Lake-controlled accounts.

### Intertrak Services

17.    McLennan County records indicate Kathy Lake obtained an assumed name

certificate for Intertrak Services, 4924 Cobbs Drive #E, Waco, Texas in

August 2004.   According to the records, Kathy Lake is listed as the

business' owner.

### Grapevine Drug Mart

18.    Tarrant County records indicate Travis Lake, one of Larry Lake's sons,

obtained an assumed name certificate for Grapevine Drug Mart, 1115 West

Northwest Highway, Suite H, Grapevine, Texas in July 2006; Travis Lake

is listed as the owner on the certificate.  Travis Lake and Stacey Lyn

Dannel (one of Lake's daughters) work at the pharmacy.

19.    In 2006, the Texas State Board of Pharmacy took disciplinary action

against Larry Lake for falsifying applications for renewal of pharmacist

license with regard to criminal history.  Lake was fined $1,000.00 by the Board.

20.    Texas Sales and Use Tax Returns from 2006 to 2008 for Grapevine Drug Mart filed with the Texas Comptroller's Office list Larry Lake as the taxpayer.  The checks used to pay the monthly sales tax were drawn on three accounts in the name of Grapevine Drug Mart, one at Chase Bank, one at Washington Mutual bank, and one at Capital One Bank.  The majority of the checks paid to the Comptroller were endorsed by Kathy Lake.

### Larry Lake's Criminal History

21.    Larry Lake was convicted for theft in 1990 arising from an incident in Grapevine in 1989.  According to police reports, the complainant was preparing to pay for groceries at the Burrus Supermarket when Lake, the pharmacist, walked up to the checkout counter, picked up her $50.00 bill, placed a receipt on the counter, and walked back to the pharmacy; the complainant followed Lake, inquiring what he was doing taking her money.  According to police reports, Lake replied that the money was to pay a bill owed by the complaint's sister; the complainant explained the bill owed by her sister was not her concern and demanded the money back.  According to police reports, Lake refused to return the money, so he was charged with theft.

22.    Larry Lake was convicted in November 2005 for unlawfully carrying a

weapon (Cause No. 0992845001) arising from an incident in Arlington,

Texas.  According to police reports, an officer was flagged down by a

citizen and received information that a subject matching Lake's description

and driving a 2000 Ford Excursion SUV had pointed a "MAC 10"

submachine gun at him and told him to get off the property at 801 E.

Division (a VIP Finance location).  According to police reports, officers

located the vehicle, stopped it, and determined Larry Lake was the driver;

officers then saw a 9 mm Tec-9 machine pistol with a loaded magazine on

the front seat.  According to police reports, the weapon had a "stove pipe",

meaning a round was sticking up in the ejection port as if the weapon had

been attempted to be fired, but had jammed.  Lake was arrested and charged

with unlawful carrying of a weapon.

### The Lakes' Residences

23.    In December 2006, the Lakes purchased the residence at 4400 Eaton Circle

in Colleyville, Texas.  The property was purchased using an $883,715.33

cashier's check funded from a Compass bank account in the name of Air

IQ; Kathy Lake and Chelsi Lake are listed as signatories on this account

(account discussed in later paragraphs).  According to appraisal district

records, 4400 Eaton Circle is valued at $900,000.00.

24.    In May 1997, the Lakes purchased the property at 913 Keller Smithfield

Road in Keller, Texas.  The residence was sold by the Lakes on April 1,

2008; the Warranty Deed listed the Grantors as Kathy Lake and spouse Larry Lake.

25.    The Lakes' Eaton Circle residence address is used on the respective checking accounts for the AIR IQ and Cash Auto Sales businesses.

## The Lakes' Financial Accounts

26.    According to records, Larry Lake and/or Kathy Lake maintain and/or control the following financial accounts which are directly related to or involved in the bankruptcy fraud and/or structuring offense:

a.    E*Trade account XXXX-1417, an individual account held in the name of Larry Lake at 913 Keller Smithfield Rd South ("ET1417"). I reviewed the account records for the period July 1, 2002 through September 3, 2004.

b.    E*Trade account XXXX-3208, an individual account held in the name of Larry Lake at 913 Keller Smithfield Rd South ("ET3208"). I reviewed the account records for the period September 3, 2004 through April 30, 2007.

c.    E*Trade account XXXX-2051, a joint account held in the names of Kathy L. Lake and Larry K. Lake at 913 Keller Smithfield Rd ("ET2051"). I reviewed the account records for the period November 1, 2004 through April 30, 2008.

d.    E*Trade account XXXXXX3361, an individual account held in the name of Kathy L. Lake ("ET3361"). I reviewed the account records for the period December 27, 2005 through July 31, 2006.

e.    Compass Bank account XXXX4664 in the name of Air IQ ("CO4664"). This account was opened on March 8, 2006. I have reviewed the account records for the period beginning March 8, 2006 through March 30, 2007. Both Kathy Lake and Chelsi Lake have signature authority on this account.

f.    Capital One Bank account XXXXXX1418 in the name of Kathy Lake ("CP1418"). This account was opened on July 21, 2006. I have

reviewed the account records for the period beginning July 21, 2006 through August 23, 2007. Kathy Lake has sole signature authority on this account.

g.    Regions Bank account XXXXXX8915 in the name of Larry Lake ("RG8915"). This account was opened on November 10, 2006. I chave reviewed the account records for the period beginning November 10, 2006 through July 6, 2007. Larry Lake has sole signature authority on this account.

h.    Chase Bank account XXXXXXXX4365 in the name of Kathy Lake ("CH4365"). This account was opened on August 4, 2004. I have reviewed the account records for the period beginning December 24, 2005 through July 24, 2008. Kathy Lake has sole signature authority on this account.

i.    Capital One Bank account XXXXXX4642 in the name of Kathy Lake ("CP4642"). This account was opened on January 23, 2007. I have reviewed the account records for the period beginning January 23, 2007 through June 30, 2008. Kathy Lake has sole signature authority on this account.

j.    Chase Bank account XXXXX3725 in the name of Larry Lake, dba Cash Auto Sales ("CH3725"). This account was opened on May 8, 2007. I have reviewed the account records for the period beginning May 8, 2007 through August 8, 2007. Both Larry Lake and Kathy Lake have signature authority on this account.

k.    Capital One Bank account XXXXXX6370 in the name of Larry Lake dba Cash Auto Sales ("CP6370"). This account was opened on May 8, 2007. I have reviewed the account records for the period beginning May 8, 2007 through July 17, 2007.

l.    Capital One Bank account XXXXXX2776 in the name of Cash Auto Sales ("CP2776"). This account was opened on July 17, 2007. I have reviewed the account records for the period beginning July 17, 2007 through March 31, 2008.

m.    Washington Mutual Bank account XXXXXXX2301 in the name of Kathy Lake dba Air IQ ("WM2301"). This account was opened on July 24, 2007. I have reviewed the account records for the period beginning July 24, 2007 through December 31, 2008. Both Kathy Lake and Larry Lake have signature authority on this account.

n.    Washington Mutual Bank account XXXXXX2319 in the name of Larry Lake dba Cash Auto Sales ("WM2319"). This account was opened on July 24, 2007. I have reviewed the account records for the period beginning July 24, 2007 through March 5, 2008. Both Larry Lake and Kathy Lake have signature authority on this account.

o.    Capital One Bank account XXXXXX0999 initially in the name of Kathy Lake then later changed to in the name of Kathy Lake or Larry Lake ("CP0999"). This account was opened on May 14, 2008. I have reviewed the account records for the period beginning May 14, 2008 through July 10, 2009.

p.    Capital One Bank account XXXXXX8439 in the name of Air IQ ("CP8439"). This account was opened on September 19, 2008. I have reviewed the account records for the period beginning September 19, 2008 through July 10, 2009. Both Larry Lake and Kathy Lake have signature authority on this account.

q.    Capital One Bank account XXXXXX8242 in the name of VIP Finance ("CP8242"). This account was opened on September 17, 2008. I have reviewed the account records for the period beginning September 17, 2008 through December 31, 2008. Both Larry Lake and Kathy Lake have signature authority on this account.

r.    Capital One Bank account XXXXX3473 an account in the name of Kathy Lake ("CP3473"). This account was opened on February 25, 2008. I have reviewed the account records for the period beginning February 25, 2008 through December 31, 2008.

s.    First Southwest Company / Brookstone Securities Inc. account XXXX0765 in the name of Kathy Lake ("FSW0765"). This account was opened on December 19, 2008. I have reviewed the account records for the period beginning December 19, 2008 through October 30, 2009. Kathy Lake has sole signatory authority on this account.

t.    Capital One Bank account XXXXXX8234 in the name of Procon of Texas ("CP8234"). This account was opened on September 17, 2008. I have reviewed the account records for the period beginning September 17, 2008 through July 10, 2009. Both Larry Lake and Kathy Lake have signature authority on this account.

The chart attached as Exhibit A to this affidavit displays all confirmed currency deposits into thirteen of the aforementioned accounts from July 21, 2006 through July 12, 2009.

## Account Analysis

### Introduction

27. Since 2006, Larry Lake and Kathy Lake have been depositing currency in amounts ranging from $3,800.00 to $9,700.00 into at least ten (10) different bank accounts located at four (4) different banks. From January 2006 through June 2009, they have structured cash deposits totaling over $8,000,000.00 into these accounts. On many days during that period, there were up to three separate currency deposits made to multiple bank accounts. Kathy and/or Larry Lake are the only account holders for the accounts receiving structured funds.

28. Most of the activity in the accounts maintained or controlled by the Lakes consists of transferring funds between accounts; purchasing cashier's checks from accounts to deposit into other accounts; transferring money to fund Certificates of Deposit ("CDs"); and transferring funds into a brokerage account. Several of the accounts appear to have been set up for the sole purpose of receiving structured currency deposits and transferring them to other accounts. This is a classic layering method often used in structuring and money laundering operations.

14

## E*Trade Accounts (ET3208, ET2051, and ET3361),

29.    An analysis of the E*Trade accounts revealed the following:

   a.    Seven securities purchases totaling $441,009.94 were made in
         ET3208 from November 3, 2004 through November 19, 2004, and
         nineteen (19) securities sales totaling of $1,348,410.45 were
         conducted from ET3208.  On November 16, 2004, $2,730,000.00
         was transferred from ET3208 to ET2051.

   b.    On April 27, 2006, a deposit of $100,000.00 from Larry Lake DBA
         VIP Finance was made into ET3361.

## Chase 4365 (CH4365)

30.    An analysis of CH4365 revealed numerous deposits to the account in
       amounts just under the currency reporting requirement (more than
       $10,000.00).  Specifically, from August 7, 2006 through July 23, 2007, one
       hundred fifty-eight (161) separate currency deposits totaling $1,246,096.00
       were made into the account; no single currency deposit exceeded
       $10,000.00.

31.    From October 11, 2006 to December 11, 2006, $325,076.40 was transferred
       from the account to CO4664 in three transactions.  Of that amount
       transferred, $319,135.02 was traceable to structured funds.

32.    On November 16, 2006, check #1849 was debited from CH4365, payable
       to Chicago Title in the amount of $10,000.00 for real property located at

15

4400 Eaton Circle in Colleyville, Texas; the $10,000.00 was traceable to structured funds.

33. From January 25, 2007 through July 13, 2007, $760,000.00 was transferred from CH4365 to CP4642 in six transactions; $759,915.81 of that amount was traceable to structured funds.

34. On May 19, 2008, a check was written from CH4365 for $48,000.00, payable to Ann Lake (the mother of Larry Lake). As of June 24, 2008, the balance in the account was $4,418.56.

### Capital One 1418 (CP1418)

35. An analysis of CP1418 revealed numerous deposits to the account in amounts just under the currency reporting requirement (more than $10,000.00). Specifically, from August 8, 2006 through January 24, 2007, sixty-three (63) separate currency deposits totaling $466,210.00 were made into the account, and no single currency deposit exceeded $10,000.00.

36. From October 11, 2006 through November 8, 2006, $496,969.78 was transferred in five transactions from CP1418 to CO4664; $308,830.05 was traceable to structured funds. On January 24, 2007, an additional $150,000.00 was transferred from CP1418 to CP4642; $147,673.00 was traceable to structured funds. CP1418 was dormant from January 24, 2007 until July 25, 2007. On July 26, 2007, $10.984.23 was transferred from CP1418 to CP4642 in closing CP1418; $10,972.92 was traceable to structured funds.

16

### Regions 8915 (RG8915)

37. An analysis of RG8915 revealed numerous deposits to the account in amounts just under the currency reporting requirement. Specifically, from November 10, 2006 through June 8, 2007, one hundred four (104) separate currency deposits were made into RG8915, totaling approximately $783,579.00; no single currency deposit exceeded $10,000.00. Aside from interest payments, no other deposits were credited to RG8915.

38. On December 6, 2006, $110,000.00 was transferred from RG8915 to CO4664; $109,500.00 of it was traceable to structured funds.

39. From January 25, 2007 through June 11, 2007, a total of $674,899.00 was transferred from RG8915 to CP4642 account through five transactions. Of the amount transferred, $674,079.00 was traceable to structured funds. RG8915 was closed on June 11, 2007, after the fifth transfer.

### Compass 4664 (CO4664)

40. An analysis of CO4664 revealed that the account was opened on March 8, 2006 with a deposit of $517,125.69 in non-structured funds. On July 24, 2006, $520,000.00 of non-structured funds was transferred to a Certificate of Deposit at Capital One and combined with other non-structured funds, giving the CD a value of $1,000,000.00. The remaining balance in CO4664 was $4,070.11.

41. Based on a review of records, CO4664 was essentially used to collect money subsequently used to purchase the Lakes' residence at Eaton Circle

17

in Colleyville, Texas.  The majority of the money in CO4664 came from

three accounts controlled by Larry Lake; the funds transferred to CO4664

from the three accounts were structured into those three accounts from

August 2006 through the time of their wire transfer to CO4664.

The chart below listed transfers into CO4664:

| Date: | Amount: | Source: |
| --- | --- | --- |
| 8/7/2006 | $15,000.00 | CP1418 |
| 8/7/2006 | $45,000.00 | CH4365 |
| 10/10/2006 | $202,947.63 | CP1418 |
| 10/10/2006 | $170,117.00 | CH4365 |
| 10/13/2006 | $107,000.00 | CP1418 |
| 10/13//2006 | $35,000.00 | CP3265 |
| 11/08/2006 | $100,242.00 | CH4365 |
| 11/08/2006 | $110.080.00 | CP1418 |
| 11/14/2006 | $50,000.00 | Cashier's check |
| 12/04/2006 | $110,000.00 | RG8915 |
| 12/04/2006 | $35,000.00 | CP6391 |
| 12/04/2006 | $54,717.40 | CH4365 |
| 12/04/2006 | $61,942.15 | CP1418 |

Total transferred:   $1,097,046.18

42.   On December 4, 2006, the balance in CO4664 was $1,106,980.22.  Of this

balance, $737,465.07 was traceable to structured currency deposits,

$359,581.11 from non-traceable or non-structured sources, and $9,934.04

from interest generated.

43.   On December 13, 2006, Kathy Lake used funds from CO4664 to purchase a

cashier's check (#4867993169) payable to Chicago Title Insurance

Company in the amount of $883,715.53.  The check was then used to

purchase the residence at 4400 Eaton Circle, Colleyville, Texas.

44.     Dollar-for-dollar tracing shows that $514,200.38 of the $883,715.53 used to purchase the residence was traceable to structured funds; $359,581.11 was generated from non-structured sources; and $9,934.04 was from interest.

45.     On February 5, 2007, an additional $227,018.06 in funds traceable to structuring was transferred from CO4664 to CP4642.

### Capital One 4642 (CP4642)

46.     An analysis of CP4642 revealed numerous deposits to the account in amounts just under the currency reporting requirement.  Specifically, from January 25, 2007 through September 21, 2007, one hundred forty-eight (148) separate currency deposits totaling $1,206,695.00 were made into CP4642; no single deposit exceeded $10,000.00.  In addition to receiving a significant amount of structured deposits, CP4642 also appeared to function as a collection/distribution point for funds from other accounts into which funds were structured.  Generally, funds were transferred out of CP4642 through the purchase of CDs or through direct transfers to CP0999, eventually ending up in CP3473. CP 4642 was closed on June 30, 2008.

### Chase 3725 (CH3725)

47.     An analysis of CH3725 revealed numerous deposits to the account in amounts just under the currency reporting requirement.  Specifically, from May 8, 2007 through July 17, 2007, thirty-nine (39) separate currency deposits were made into CH3725, totaling approximately $302,205.00; no single currency deposit exceeded $10,000.00.  Aside from interest

payments credited to the account, no other deposits were credited to CH3725.

48.   On June 12, 2007, $160,000.00 in funds traceable to structuring was transferred from CH3725 to CP4642.  On July 14, 2007, $110,000.00 in funds traceable to structuring was again transferred to CP4642.

49.   On August 8, 2007, $31,751.48 in funds traceable to structuring was sent to WM2319.  The account was closed with a zero balance on August 31, 2007.

### Capital One 6370 (CP6370)

50.   An analysis of CP6370 revealed numerous deposits to the account in amounts just under the currency reporting requirement.  Specifically, from May 8, 2007 through July 16, 2007, thirty-five (35) separate currency deposits totaling $293,992.00 were made into CP6370; no single currency deposit exceeded $10,000.00.  Aside from interest payments, no other deposits were credited to CP6370.

51.   Two transfers totaling $280,000.00 were sent from CP6370 to CP4642 on June 10, 2007 and July 13, 2007.  Of that $280,000.00, $279,500.00 was traceable to structured funds.

52.   On July 17, 2007, $14,235.20 was sent from CP6370 to CP2776, effectively closing the account and giving it a zero balance.

### Capital One 2776 (CP2776)

53.     An analysis of CP2776 revealed the account was opened on July 17, 2007;

on that day, $50,000.00 in non-structured funds was transferred to CP2776

from CP4642, and $14,235.20 in structured funds was transferred to

CP2776 from CP6370 (the closing balance of CP6370).  Beginning the very

next day, numerous currency deposits were made to the account in amounts

just under the currency reporting requirement.  Specifically, from July 18,

2007 through October 12, 2007, fifty-four (54) separate currency deposits

totaling $435,063.00 were made into CP2776; no single currency deposit

exceeded $10,000.00.

54.     On January 14, 2008, $2,000.00 in non-structured funds was transferred out

of CP2776.

55.     On February 26, 2008, four separate cashiers' checks totaling $507,060.28

were written using funds from CP2776 account and subsequently deposited

into CP3473.  Of the $507,060.28 in check funds, $459,060.28 was

traceable to structured funds.  The withdrawal of the check funds

effectively closed CP2776.

### Washington Mutual 2301 (WM2301)

56.     An analysis of WM2301 revealed the account was opened on July 24,

2007; on that day, $150,000.00 in non-structured funds was transferred to

WM2301from CP4642.  Beginning the very next day, numerous currency

deposits were made into WM12301.  Specifically, from July 25, 2007

through September 16, 2008, approximately $3,795,698.00 in currency was deposited into the account through two hundred twenty-three (223) separate currency deposits.   Of the $3,795,698.00 deposited, $810,511.00 was structured in ninety-eight (98) separate transactions, none of which exceeded $10,000.00.

57.   During that sixteen-month period, the currency amount deposited into the Lake's accounts totaled between $25,000.00 and $30,000.00 per day.  From October 1, 2007 through May 29, 2008, the $25,000.00 to $30,000.00 in currency was deposited into WM2301 daily through a single deposit transaction.   However, before October 1, 2007 and after May 29, 2008, the $25,000.00 to $30,000.00 in currency was structured into two or three separate deposits per day, with each deposit under the CTR limit.

58.   On March 5, 2008, a transfer of $1,000,000.00 was made from WM2301 to CP4642.  Of that amount, $381,562.00 was traceable to structured funds.

59.   On July 16, 2008, $300,000.00 was transferred from WM2301 to CP0999. Of that amount, $264,387.88 was traceable to structured funds.

### Washington Mutual 2319 (WM2319)

60.   An analysis of WM2319 revealed the account was opened on July 24, 2007 with a $150,000.00 deposit from CP4642 (traceable to non-structured sources).   Beginning the very next day, numerous currency deposits were made to WM2319 in amounts just under the currency reporting requirement.  Specifically, from July 25, 2007 through September 20, 2007,

22

approximately $219,357.00 in currency was structured into the account through twenty-seven (27) separate currency deposits; no single currency deposit exceeded $10,000.00.

61.   On August 8, 2007, $31,757.48 traceable to structured funds was deposited into WM2319 from CH3725.

62.   On March 5, 2008, $412,445.21 was sent to WM2301, effectively closing the account. Of the amount sent to WM2301, $262,445.21 was traceable to structured funds and $150,000.00 to non-structured sources.

**Capital One 0999 (CP0999)**

63.   An analysis of CP0999 revealed numerous deposits to the account in amounts just under the currency reporting requirement. Specifically, from May 19, 2008 through July 31, 2008, nineteen (19) separate currency deposits $158,074.00 were made into CP0999; no single currency deposit exceeded $10,000.00.

64.   As mentioned previously, in addition to the structured currency, CP0999 received transfers from CDs purchased by the Lakes.

65.   All funds placed in CP0999 were ultimately transferred into CP3473, with the exception of two transfers – one sent to a company called Current Technology for $1,000,000.00, and the other detailed below in the CP8439 section.

**Capital One 8439 (CP8439)**

66.    An analysis of CP8439 revealed numerous deposits to the account in amounts just under the currency reporting requirement.  Specifically, from September 18, 2008 through December 1, 2008, forty-six (46) separate currency deposits totaling $369,979.00 were made into CP8439, with no single currency deposit exceeding $10,000.00.

67.    On September 22, 2008, $1,055,084.62 in non-structured funds was transferred into CP8439 from CP0999.

68.    On September 26, 2008, $100,000.00 in non-traceable or non-structured funds was deposited into CP8439 from a Chase account held in the name of Grapevine Drug Mart.  On October 15, 2008, $25,000.00 in non-traceable or non-structured funds was deposited into CP8439 from a Chase account held in the name of Grapevine Drug Mart.

69.    On December 1, 2008, $766,000.00 in non-structured funds was transferred back to CP0999 from CP8439.

**Capital One 3473 (CP3473)**

70.    An analysis of CP3473 revealed this brokerage account received funds from all the aforementioned accounts maintained by the Lakes.  Funds deposited into CP3473 were used to invest in various securities.  No withdrawals were made from CP3473 until December 2008.  In late December 2008, all the securities held in CP3473 were transferred to

24

another brokerage account (account #XXX0765) at First Southwest. The value of the CP3473 funds at time of transfer was $8,987,592.43.

### First Southwest Securities 0765 (FSW0765)

71.    An analysis of FSW0765 revealed this brokerage account was funded by the transfer of all assets of CP3473 in December 2008. As of December 31, 2008, the value of FSW0765 was $7,791,333.46; of that amount, $4,858,937.95 was traceable to structured proceeds. Therefore, 62% of the funds held in FSW0765 are traceable to structured funds.

72.    As of October 30, 2009, FSW0765 had a balance of $10,923,347.45. Since no funds were added to FSW0765 and 62% of the funds were traceable to structuring, the value of structured funds in FSW0765 is now $6,772,475.42.[1]

### Summary of the "Machine" and Additional Structured Deposits

73.    The majority of money structured into the Lakes' accounts was funneled into two main accounts - CP4642 and CP0999. Once the money was deposited into these accounts, it was transferred back and forth between these accounts, but generally never left these accounts.[2] Eventually, all funds were transferred to CP3437. In other words, the Lakes created a self-contained "machine" through their network of accounts. Simply put, the

---

[1]    This amount from this account is sought to be seized by the Government.

[2]    The exceptions - a $1.0M transfer to Current Technology (mentioned in paragraph 67) and a $1,055.084.62 transfer to CP8439, of which $766,000.00 was sent back to CP0999 (mentioned in paragraph 71).

structured and non-structured cash was fed into one end of the machine and moved around and comingled, sometimes earning interest. However, ultimately the "machine" was able to place the funds into a final account - CP3437 (and subsequently FSW0765).

74.    In summary, $5,700,839.19 was deposited into CP3437 from CP4642; $5,931,566.83 was deposited into CP3437 from CP0999; and $500,000.00 was deposited into CP3437 for a total of $12,132,406.02 deposited. Of that $12,132,406.02 deposited, $4,858,937.95 was traceable to structured funds (mentioned previously in paragraph 73).

75.    In addition to the "machine" and the funds ending up in FSW0765 by December 2008, the Lakes also structured currency into CP8234 which did not end up in FSW0765. Since the exact funds structured into CP8234 are or may no longer be in that account, seizure of "replacement" funds subsequently deposited into CP8234 up to the amount structured may be seized from CP8234 pursuant to 18 U.S.C. § 984 (discussed in paragraph 8).

### Capital One 8234 (CP8234)

76.    An analysis of CP8234 revealed numerous deposits to the account just under the reporting requirement. Specifically from December 2, 2008 through July 10, 2009, one hundred twenty-seven (127) separate currency deposits totaling $1,511,781.00 were made into CP8234. Only twenty-two (22) of the 127 deposits exceeded $10,000.00. Of the $1,511,781.00

deposited, $876,519.00[3] was structured in one hundred four (104) separate transactions, none of which exceeded $10,000.00.

### Capital One 8242 (CP8242)

77.     An analysis of CP8242 revealed numerous deposits to the account just under the reporting requirement.  Specifically from September 29, 2008 through October 29, 2008, twenty three (23) separate currency deposits totaling $191,116.00 were made into CP8242.  None of the deposits exceeded $10,000.00.

### Capital One 8439 (CP8439)

78.     The Lakes also structured currency into CP8439 which did not end up in FSW0765.  Specifically, from December 2, 2008 through July 10, 2009, one hundred and five (105) separate currency deposits totaling $839,702.00 were made into CP8439, and only 2 of the 105 deposits exceeded $10,000.00.  Of the $839,702.00, a total of $784,114.00[4] was structured in one hundred and three (103) separate transactions, none of which exceeded $10,000.00.

79.     In addition to the amount listed above, further account analysis from July 11, 2009 to November 17, 2009 shows an additional forty-six (46) deposits into CP8439 for a total of $394,876.00.  This brings the total amount

---

3       This amount from this account is sought to be seized by the Government.
4       This amount from this account is sought to be seized by the Government.

structured in CP8439 from December 2, 2008 to November 17, 2009 to a total of $1,548,969.00

### Additional Structuring

80.     According to the above analysis, the overall amount structured from July 2006 to October 2009 totals $9,248,478.00. The chart attached as Exhibit B displays all confirmed currency deposits into thirteen (13) of the aforementioned accounts from July 13, 2009 through November 17, 2009.

### Photos

81.     Capital One Bank provided transactional photos from its Colleyville branch for July 28, 2009 and 29, 2009. A transactional photo from July 28, 2009 shows Larry Lake inside the lobby with Teller 5 at approximately 12:59 p.m. Deposits tickets for CP8234 reflect a corresponding cash deposit on that day for $9,460.00. A transactional photo taken approximately thirty-five minutes later shows Kathy Lake inside the same bank's lobby with Teller 5. Deposits tickets for CP8439 reflect a corresponding cash deposit on that day for $9,813.00. A transactional photo from July 29, 2009 shows Larry Lake inside the lobby with Teller 3 at approximately 1:42 p.m. Deposits tickets for CP8234 reflect a corresponding cash deposit for on that day for $4,340.00.

### Larry Lake's Bankruptcy Matter

82.     On November 17, 2004, Larry Lake filed a Chapter 13 Voluntary Petition in the United States Bankruptcy Court for Northern District of Texas, Fort

28

Worth Division (case number 04-91209-DML-13). In the Petition, Kathy Lake was not listed as a co-debtor, but was listed as Larry Lake's current wife. I have reviewed the filings, exhibits, and other docket items filed in the case from November 17, 2004 to September 11, 2009. Lake was discharged December 23, 2009.

83.   In the bankruptcy case, Larry Lake filed various schedules and statements of financial affairs with the Court. These schedules and statements went into detail concerning assets held by both Lake and his spouse prior to and at the time of the bankruptcy filing. The schedules and statements of financial affairs were filed December 16, 2004, were amended on March 29, 2005, and have remained basically unchanged through the course of the bankruptcy proceeding. These documents require full disclosure of community property, including any other assets held or transferred in the twelve months prior to the bankruptcy filing. The documents are submitted under penalty of perjury.

84.   During the course of this investigation, it was determined that Larry Lake transferred $2,730,000.00 from an E*Trade account held solely in his name to a joint account held in the names of Larry Lake and Kathy Lake on November 16, 2004 - the day before the filing of his Chapter 13 Voluntary Petition. On the same day (November 16, 2004), Larry Lake also purchased a Regions Bank cashier's check for $348,000.00 made payable to Kathy Lake, dba AIR IQ.

85.   Based on a review of the bankruptcy documents, Lake has made several

false declarations or statements in connection to the Petition.  I believe

these statements were made in an effort to conceal property belonging to

him (the debtor in the bankruptcy) from creditors and the trustee, conduct

which is violative of 18 U.S.C. § 152.  The following are some examples:

a.   On November 17, 2004, Lake underreported his assets on the

Voluntary Petition.  Specifically, he listed the estimated value of his

assets from $0.00 to $50,000.00, although he had transferred over

$3,000,000.00 to his wife on the previous day.

b.   On December 12, 2004, he filed Schedule A (Real Property) and

failed to declare the residence at 913 Keller Smithfield Road, valued

at over $400,000.00.

c.   On December 12, 2004, he filed Schedule B (item 2) and failed to

declare financial accounts held at Regions Bank and an E*TRADE

account in his name, as well as accounts associated with Kathy Lake

or any of her affiliates.  However, he did amend Schedule B in

March 2005 to include an E*TRADE account with a value of

$670.00.

d.   On December 12, 2004, he filed Schedule B (items 12 and 13) and

failed to declare his interest in Intertrak, Air IQ, and Grapevine Drug

Mart.

e.   On December 12, 2004, he filed Schedule B (item 33) and failed to

declare other personal property of any kind not already listed.

f.   On December 12, 2004, he filed a Statement of Financial Affairs

(items 1, 10) and failed to report income received for the year to date

(2004) and failed to list all other property transferred within one year

immediately preceding the commencement of the case (married

debtors filing under Chapter 13 must include transfers by either or

both spouses whether or not a joint petition is filed, unless the

spouses are separated and a joint petition is filed.)

**The Lakes' Federal Income Tax Situation**

86.   I have reviewed the joint tax returns of the Lakes for the years 1993

through 2008. From 1993 to 1998 the Lakes did not file federal income tax

returns. They subsequently filed tax returns for 1993 to 1998 from

December 1999 through December 2000. From 1993 to 2003 the Lakes

reported two Schedule C businesses – Grapevine Drug Mart and VIP

Finance - on their joint tax returns. Beginning in 2004, the Lakes only

reported VIP Finance as a Schedule C business on their tax return. From

2004 to 2008 the Lakes no longer reported Grapevine Drug Mart on their

Form 1040.

87.   The chart below displays VIP Finance's gross receipts/sales as reported on

the Lakes' Schedule C, Form 1040 for tax years 2004 to 2008. The figures

in the far left column of the chart were derived from bank deposit records

the Lakes provided to their accountant, Don Kelley.  The figures in the

chart's middle column also displays gross receipts for all six VIP Finance

locations from 2004 to 2008; these figures were derived from income

reports created by the Manheim Tracker Database (an accounting program)

utilized by VIP Finance.  These reports detailed the respective account

number for which payment was received, the receipt number, the date the

payment was received, the payment amount, and comments identifying the

source of the funds, *e.g.*, cash, check, money order.

|  | REPORTED GROSS RECEIPTS | ACTUAL GROSS RECEIPTS | INCOME OMITTED |
|---|---|---|---|
| 2004 | $8,495,235.00 | $11,213,201.89 | -$2,717,966.89 |
| 2005 | $8,757,106.00 | $12,201,897.83 | -$3,444,791.83 |
| 2006 | $7,854,206.00 | $11,701,760.75 | -$3,847,554.75 |
| 2007 | $5,809,212.00 | $9,905,692.90 | -$4,096,480.90 |
| 2008 | $4,910,966.00 | $8,039,819.14 | -$3,128,853.14 |
| TOTAL | $35,826,725.00 | $53,062,372.51 | -$17,235,647.51 |

As previously stated, the Lakes' accountant determined VIP Finance's

gross receipts from bank statements provided to him by the Lakes. The

Lakes, however, did not provide the accountant records from other business

accounts controlled by the Lakes or the income reports generated from VIP

Finance's Tracker Database.  As a result, gross receipts for VIP Finance

from 2004 to 2008 were not accurately reflected on the Lakes' 2004 to

2008 federal income tax returns.  The chart above displays the amount of

VIP Finance's gross receipts omitted from the Lakes' federal income tax returns.

88.  In 2003, the Lakes informed Kelley they had sold Grapevine Drug Mart for $100,000.00; they no longer reported the business or income from that business on their federal income tax returns for 2004 to 2008. The Lakes, however, continued to receive income from Grapevine Drug Mart in the form of checks from 2004 through 2008. The checks were written specifically to the Lakes or to third parties on their behalf, such as the Internal Revenue Service for personal income taxes. The chart below displays the income the Lakes received from Grapevine Drug Mart from 2004 to 2008, along with the income received by the Lakes from VIP Finance from 2004 to 2008. The Lakes did not report either amount on their federal income tax returns.

**TOTAL INCOME OMITTED**

|       | GDM | VIP | TOTAL |
|-------|-----|-----|-------|
| 2004  | $240,000.00 | $2,717,966.89 | $2,957,966.89 |
| 2005  | $225,000.00 | $3,444,791.83 | $3,669,791.83 |
| 2006  | $360,000.00 | $3,847,554.75 | $4,207,554.75 |
| 2007  | $230,000.00 | $4,096,480.90 | $4,326,480.90 |
| 2008  | $270,000.00 | $3,128,853.14 | $3,398,853.14 |
| TOTAL | $1,325,000.00 | $17,235,647.51 | $18,560,647.51 |

## Seizure Warrants

89.   On November 18, 2009, IRS-CI executed seizure warrants on CP8439, CP8234, and FSW0765.  $784,114.00 was seized from CP8439, $247,082.81 was seized from CP8439, and $6,772,475.42 was seized from FSW0765.

## Search Warrant

90.   On November 18, 2009, a search warrant was executed at the Lakes' residence at 4400 Eaton Circle, Colleyville Texas.  Items recovered from the residence included daily cash register logs and monthly bank statements for Grapevine Drug Mart from 2007, 2008, and 2009 and deposits slips for VIP Finance.  The cash register logs recorded a week of business (Monday to Saturday) at Grapevine Drug Mart and were separated for each register and subdivided into categories to track daily sales and returns.  Stapled to the logs were deposit slips and bank receipts for the actual deposits, as well as cash register tapes.  The cash register logs from August 2009 were contained in a white paper bag with the words "Larry Lake 8/09" written on it.

91.   During the search of the residence, a very large amount of currency was discovered in numerous locations, including two safes and two bags.  The currency was seized and totaled $5,965,057.00:

| | |
|---|---|
| Small duffel bag | $   275,700.00 |
| Large duffel bag | $1,072,257.00 |

| | |
|---|---|
| Small safe | $   166,050.00 |
| Large safe | $4,364,182.00 |
| 17 separate sealed bags | $     86,868.00 |
| TOTAL | $5,965,057.00 |

92. During an interview with Kathy Lake on November 18, 2009, she told agents/investigators that she knows that the bank has to fill out paperwork when she deposits more than $10,000.00 in cash and that the IRS knows about the deposits. She also stated the bank told her and her husband about the $10,000.00 reporting requirement and they have known this for many years.

93. On November 18, 2009, Richard Hamill, an employee at the VIP Finance Colleyville location, told agents/investigators that the IRS had previously come to the Colleyville location to review VIP business records. Hamill also said that when he (Hamill) asked Larry Lake what the purpose of the IRS visit was, Lake told him (Hamill) that there was nothing to worry about, because VIP never deposited more than $10,000.00 cash at one time. Lake then explained to Hamill that if you deposit more than $10,000.00 at one time, it is reported to the IRS.

## CONCLUSION

94. Based on the investigation and the information set out above, Larry Lake concealed his net worth before and during his bankruptcy proceedings and made several false declarations or statements in connection with the proceeding. These statements were made in an effort to conceal property

belonging to him (the debtor in the bankruptcy) from the trustee and his creditors. Further, based on the investigation and the information set out above, the Lakes concealed cash proceeds from the bankruptcy court and the IRS by structuring over $9,200,000.00 in cash into financial accounts from August 2006 through October 2009. Over eight hundred and eighty (880) separate deposits under $10,000.00 were made into twelve different accounts at four different financial institutions controlled by the Lakes during that three-year period. In addition to the $9,200,000.00 structured into the financial system, the Lakes accumulated and concealed $5,965,057.00 in U.S. currency inside their house. During the time they accumulated this wealth, the Lakes jointly reported significantly less in income to the IRS; from 2004 to 2008, the Lakes did not report $1,325,000.00 in income received from Grapevine Drug Mart and over $17,000,000.00 in income received from VIP Finance.

95.   Based on my training, experience, and the information in the preceding

paragraphs, I believe the property described in paragraph 2 of this affidavit

was involved in, or is traceable to property involved in, a violation of,

violations of, or a conspiracy to violate 31 U.S.C. § 5324(a) and is therefore

subject to forfeiture pursuant to 31 U.S.C. §§ 5317(c)(2).



Alan Hampton
Special Agent, IRS-CI

Subscribed and sworn to before me on this ___/7___ day of September
2010.

Notary Public, State of Texas

GLENDINE HUDDLESTON
MY COMMISSION EXPIRES
October 15, 2010

JS 44 (USAO Rev.7/98)

# CIVIL COVER SHEET

ORIGINAL

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM).

**I. (a) PLAINTIFF**

United States of America

**DEFENDANT(S)**

$6,772,475.42 in funds contained in account XXXX0765 in the name of Kathy Lake at First Southwest Company, Brookstone Securities, Inc., Dallas, Texas, et al

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

John J. de la Garza III
United States Attorney's Office
1100 Commerce, Third Floor
Dallas, Texas 75252
214.659.8682; fax 214.659.8803
john.delagarza@usdoj.gov

ATTORNEYS (IF KNOWN)

3·10CV-1916L

RECEIVED
SEP 23 2010
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**II. BASIS OF JURISDICTION** (PLACE "X" IN ONE BOX ONLY)

[X] 1 U.S. Government Plaintiff

[ ] 2 U.S. Government Defendant

[ ] 3 Federal Question (U.S. Government Not a Party)

[ ] 4 Diversity (Indicate Citizenship of Parties in item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(FOR DIVERSITY CASES ONLY)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ]1 | [ ]1 | Incorporated or Principal Place | [ ]4 | [ ]4 |
| Citizen of Another State | [ ]2 | [ ]2 | Incorporated and Principal Place of Business in Another State | [ ]5 | [ ]5 |
| Citizen or Subject of a Foreign Cntry | [ ]3 | [ ]3 | Foreign Nation | [ ]6 | [ ]6 |

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

[X] 1 Original Proceeding

[ ] 2 Removed from State Court

[ ] 3 Remanded from Appellate Court

[ ] 4 Reinstated or Reopened

Transferred from
[ ] 5 another district (specify)

[ ] 6 Multidistrict Litigation

Appeal to District Judge from
[ ] 7 Magistrate Judgment

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [] 610 Agriculture | [] 422 Appeal 28 U.S.C. 158 | [] 400 State Reapportionment |
| [] 120 Marine | [] 310 Airplane / [] 362 Personal Injury Med Malpractice | [] 620 Other Food & Drug. | [] 423 Withdrawal 28 U.S.C. 157 | [] 410 Antitrust |
| [] 130 Miller Act | [] 315 Airplane Product Liability / [] 365 Personal Injury Product Liability | [] 625 Drug Related Seizure of Property 21 U.S.C. 881 | | [] 430 Banks and Banking |
| [] 140 Negotiable Instrument | [] 320 Assault, Libel & Slander / [] 368 Asbestos Personal Injury Product Liability | [] 630 Liquor Laws | | [] 450 Commerce/ICC Rates, etc. |
| [] 150 Recovery of Overpayment & Enforcement of Judgment | | [] 640 R.R. & Truck | **PROPERTY RIGHTS** | [] 460 Deportation |
| [] 151 Medicare Act | [] 330 Federal Employers Liability | [] 650 Airline Regs | [] 820 Copyrights | [] 470 Racketeer Influenced Corrupt Organizations |
| [] 152 Recovery of Defaulted Student Loan (Excl Veterans) | [] 340 Marine | [] 660 Occupational Safety/Health | [] 830 Patent | [] 810 Selective Service |
| [] 153 Recovery of Overpayment at Veteran's Benefits | [] 345 Marine Product Liability | [X] 690 Other | [] 840 Trademark | [] 850 Securities/Commodities/Exchange |
| [] 160 Stockholders' Suits | [] 350 Motor Vehicle | | | [] 875 Customer Challenge 12 U.S.C. 3410 |
| [] 190 Other Contract | [] 355 Motor Vehicle Product Liability | **LABOR** | **SOCIAL SECURITY** | [] 891 Agricultural Acts |
| [] 195 Contract Product Liability | | [] 710 Fair Labor Standards Act | [] 861 HIA (1395f) | [] 892 Economic Stabilization Act |
| | **PERSONAL PROPERTY** | | [] 862 Black Lung (923) | [] 893 Environmental Matters |
| | [] 370 Other Fraud | [] 720 Labor/Mgmt. Relations | [] 863 DIWC/DIWW (405(g)) | [] 894 Energy Allocation |
| **REAL PROPERTY** | [] 371 Truth in Lending | | [] 864 SID Title XVI | Act |
| [] 210 Land Condemnation | [] 380 Other Personal Property Damage | [] 730 Labor/Mgmt. Reporting & Disclosure Act | [] 865 RSI (405(g)) | [] 895 Freedom of Information Act |
| [] 220 Foreclosure | [] 385 Property Damage Product Liability | | | [] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [] 230 Rent Lease & Ejectment | | [] 740 Railway Labor Act | **FEDERAL TAX SUITS** | |
| [] 240 Torts to Land | **CIVIL RIGHTS** | [] 790 Other Labor Litigation | [] 870 Taxes (U.S. Plaintiff or Defendant) | [] 950 Constitutionality of State Statutes |
| [] 290 All other Real Property | [] 441 Voting | | | |
| | [] 442 Employment | [] 791 Empl. Ret. Inc. Security Act. | [] 871 IRS - Third Party 26 U.S.C. 7609 | [] 890 Other Statutory Actions |
| | [] 443 Housing/ Accommodations | **PRISONER PETITIONS** | | |
| | [] 444 Welfare | [] 510 Motions to Vacate Sentence | | |
| | | **Habeas Corpus** | | |
| | | [] 530 General | | |
| | | [] 535 Death Penalty | | |
| | | [] 540 Mandamus & Other | | |
| | | [] 550 Civil (including 1983 Actions) | | |

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTE UNLESS DIVERSITY)

CIVIL FORFEITURE -- 31 U.S.C. § 5317(c)(2)

**VII. REQUESTED IN COMPLAINT:** CHECK IF THIS IS A CLASS ACTION [ ] UNDER F.R.C.P. 23    DEMAND $    CHECK YES only if demanded in complaint: JURY DEMAND: [ ] YES [XX ] NO

**VIII. RELATED CASE(S) IF ANY** (See instructions)    JUDGE_____    DOCKET NUMBER _____

DATE

September 23, 2010

SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT

John J de la Garza, III, Assistant United States Attorney